WO                                                                                                   KAB

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lee Jones, Sr., | No. CV 19-08055-PCT-MTL (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| R Davis, et al., | |
| Defendants. | |

Plaintiff Edward Lee Jones, Sr., who is currently confined in the Arizona State Prison Complex-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Defendants' Motion for Summary Judgment[1] (Doc. 107) and Plaintiff's Objections to the Magistrate Judge's Orders (Docs. 138 and 140).[2]

**I.    Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment excessive force claim against Defendant Davis based on Plaintiff's allegations that while handcuffed, he was "abruptly slammed into a bar on a fence, resulting

---

[1] Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 79), and he opposes the Motion. (Doc. 127.)

[2] Plaintiff's filings are nearly illegible because they are not dark enough for the Court to read all of the words, rendering the process of deciphering Plaintiff's filings unnecessarily laborious. Plaintiff is warned that if his future filings are difficult to read in the future, they will be stricken from the record and will not be considered when ruling on future Motions.

in a laceration" to his chin, and "at the time the altercation occurred, Plaintiff was compliant and did not resist being handcuffed or walked by Defendant Davis through the intake door" (Doc. 30 at 8), and a First Amendment retaliation claim against Defendant Rydgren based on the following allegations. (Doc. 30 at 9; Doc. 9 at 8-9.)

On June 15, 2018, Defendant Rydgren issued a disciplinary infraction charging Plaintiff with filing a vexatious grievance in retaliation for Plaintiff filing 26 grievances since arriving at the facility on April 25, 2018, and filing an informal complaint on June 13, 2018, accusing Defendant Rydgren's subordinate of failing to do her job. (Doc. 9 at 8-9.) Plaintiff asserts Defendant Rydgren's charge related to a May 2018 grievance Plaintiff filed against Defendant Tyler, but Defendant Rydgren assigned a case number to that grievance and requested an "extension of time frames [until] June 5, 2018," to address it, which "clearly demonstrated that Defendant Rydgren had previously reviewed the grievance and had already determined the grievance was made in good faith and would be processed." (*Id.*) Plaintiff alleges he was kept in maximum custody approximately three weeks longer than necessary while the disciplinary charge was processed, and the disciplinary infraction was ultimately "modified and resolved informally." (*Id.*)

The Court dismissed the remaining claims and Defendants. (Doc. 30.)

**II.     Plaintiff's Objections (Docs. 138 and 140)**

Plaintiff objects to the Magistrate Judge's March 25, 2021 Order denying Plaintiff's Motion for Sanctions and to Hold ADC and Centurion in Contempt (Doc. 126) and objects to the Magistrate Judge's April 19, 2021 Order denying Plaintiff's Motions for Subpoenas (Doc. 135). (Docs. 138 and 140.)

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, parties may file objections to a magistrate judge order within fourteen days after being served with a copy of the order. The Court must then consider these objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Plaintiff's objections consist of rambling narratives about the history of the case, and unfounded accusations that the Magistrate Judge is biased against him. Plaintiff

identifies no portion of the Magistrate Judge's Orders that are "clearly erroneous" or "contrary to law." The Court has reviewed Plaintiff's Motions and the Magistrate Judge's Orders and the Orders are neither clearly erroneous or contrary to law. Accordingly, the Magistrate Judge's Orders will be affirmed and Plaintiff's objections will be overruled.

**III.    Defendants' Motion for Summary Judgment**

Defendants assert that they are entitled to summary judgment because they did not violate Plaintiff's constitutional rights.

**A.    Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B.     Defendant Davis

Defendant Davis asserts that he is entitled to summary judgment on Plaintiff's Eighth Amendment excessive force claim because he acted to maintain order when Plaintiff and other prisoners became disruptive and verbally abusive to staff during the intake process.

#### 1.     Facts

##### a.     Plaintiff's Version

Plaintiff asserts that immediately following the intake process at Kingman Prison, Officer Tyler began giving prisoners their property, but would not return Plaintiff's identification card to him because of an alleged "change of appearance." (Doc. 127 at 6.) Plaintiff explained to Tyler that he did not need a new identification card and had a religious shaving waiver allowing him to have a beard, but Tyler told Plaintiff that his current identification card did not match his appearance. (*Id.*) Tyler told Plaintiff that she threw away his religious shaving waiver. (*Id.*)

When the other prisoners began to leave intake to go to their housing, Tyler asked Plaintiff if he wanted to stay behind to address his issue with a sergeant and when Plaintiff said yes, Tyler locked him in a holding tank. (*Id.* at 8.) Tyler then returned to the holding tank with Davis and Plaintiff handed Davis his legal documents, but Davis tossed the documents into the air and told Plaintiff to sit down and that Plaintiff could not "say anything to women" and accused Plaintiff of calling Tyler "satan" and a "harlot." (*Id.* at 9.)

Davis then told Plaintiff to apologize to Tyler and to shave his beard within 24 hours "or be held down [while his] beard [was] forcefully shaved off." (*Id.* at 10.) Plaintiff

refused to apologize, but told Davis that he would explain to the COO that he could not shave his beard for religious reasons and would contact his attorneys. (*Id.*)

Plaintiff then stood up "in a non-aggressive manner" and turned around in order to be handcuffed, and after Davis handcuffed Plaintiff, he walked Plaintiff a short distance and then abruptly slammed Plaintiff into a fence causing a laceration on Plaintiff's chin and then lifted Plaintiff by his handcuffs, which were still behind his back. (*Id.* at 10-11.) Plaintiff was then taken to the health unit for treatment of his injuries. (*Id.* at 11.)

### b. Defendant's Version

Defendant Davis was employed at Kingman Prison as a correctional officer, and asserts that while Plaintiff and the other prisoners were being processed for intake on April 25, 2018, the prisoners, including Plaintiff, became disruptive—yelling and verbally abusive to the staff members. ((Doc. 108 ¶¶ 12, 14.) Defendant Davis, along with other officers, handcuffed and restrained the prisoners and Defendant Davis restrained and handcuffed Plaintiff. (*Id.*) Defendant Davis asserts that he did not engage in specific verbal exchanges with Plaintiff, other than to get him to be cooperative during the restraint process. (*Id.* ¶ 15.) Defendant Davis does not recall if Plaintiff was holding any paperwork in his hands at the time, but Defendant Davis asserts that he did not specifically take any papers from Plaintiff. (*Id.*)

Defendant Davis asserts that his only interaction with Plaintiff was to place him in restraints and cuff him due to his disruptive behavior during the intake process. (*Id.*)

Defendant Davis asserts that he used only the needed force to place Plaintiff in restraints as he was disruptive during the intake process, applying only the necessary force to restrain Plaintiff. Defendant Davis asserts that he does not have personal knowledge about any actions taken or not taken regarding the shaving of Plaintiff's beard. (*Id.* ¶ 18.)

### 2. Legal Standard

Use of excessive force against a prisoner violates the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The use of force is constitutional if it is used in a good faith effort to keep

1 or restore discipline; it is unconstitutional if it is used "maliciously and sadistically for the
2 very purpose of causing harm." *Whitley*, 475 U.S. 312, 320-21 (1986).

3 A court considers five factors in determining whether a defendant's use of force was
4 sadistic and malicious for the purpose of causing harm: (1) the extent of the injury, (2) the
5 need to use the force, (3) the relationship between the need and the amount of force used,
6 (4) the threat "reasonably perceived" by the officials, and (5) "any efforts made to temper
7 the severity" of the force. *Hudson v. McMillan*, 503 U.S. 1, 7 (1992) (citing *Whitley*, 475
8 U.S. at 321).

### 3. Discussion

10 Here, nearly every fact leading to the use of force is disputed by the Parties. The
11 Court must accept Plaintiff's facts as true when ruling on Defendants' Motion for Summary
12 Judgment, and Defendant Davis makes no argument that he is entitled to summary
13 judgment under Plaintiff's version of facts. The Court cannot decide credibility disputes
14 at the summary stage.

15 Defendants argue that Plaintiff's testimony is self-serving. Generally, "[t]hat an
16 affidavit is self-serving bears on its credibility, not on its cognizability for purposes of
17 establishing a genuine issue of material fact." *United States v. Shumway*, 199 F.3d 1093,
18 1104 (9th Cir. 1999). Here, Plaintiff's Response is signed under penalty of perjury, and he
19 has personal knowledge to testify as to facts in his personal knowledge and, therefore, his
20 testimony is admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). While there are certain
21 circumstances where testimony may be so self-serving that the testimony cannot defeat
22 summary judgment, such circumstances are not present with regard to Plaintiff's version
23 of events. *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a
24 conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is
25 insufficient to create a genuine issue of material fact.").

26 Here, Plaintiff provides detailed facts within his personal knowledge to support his
27 excessive force claim. That his testimony is also self-serving is to be expected since it is
28 offered in support of his claims. *See Shumway*, 199 F. 3d at 1104 (Defendant's "affidavit

was of course ' self-serving,' . . . [a]nd properly so, because otherwise there would be no point in submitting it."); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (same). As such, Defendants' argument that Plaintiff's testimony cannot create a genuine issue of material fact is simply incorrect under the circumstances of this case.

Under Plaintiff's version of events, Defendant threw him against a fence resulting in a cut to Plaintiff's chin and then lifted him up by handcuffs while the handcuffs restrained Plaintiff's arms behind his back. It is undisputed that Plaintiff sustained a cut to his chin during this interaction. Plaintiff asserts that he was complying with Defendant Davis's orders and there was no need for any force. Under this version of facts, a reasonable jury could find in Plaintiff's favor. In his Reply, Defendant Davis suggests that he was permitted to use force because Plaintiff refused to apologize to Tyler. (Doc. 139 at 3 ("Defendant Davis stepped up to maintain order during the intake process and to curb Plaintiff's behavior towards another correctional officer (Officer Tyler). [*See, e.g.*, Doc. 122/127 at ¶ 28, Plaintiff admits he told Davis he refused to apologize to Officer Tyler].").) A reasonable jury could find that that Plaintiff refusing to apologize did not justify the use of force under the circumstances.

For the foregoing reasons, the Motion for Summary Judgment will be denied as to the Eighth Amendment excessive force claim asserted against Defendant Davis.

### C. Defendant Rydgren

Defendants assert that although Plaintiff claims that Defendant Rydgren retaliated against Plaintiff by issuing a ticket following a May 2018 grievance against Officer Tyler, because the ticket was processed by a hearing officer for the unit and resolved informally,[3] the ticket was not a basis for Plaintiff's maximum custody classification as Defendant Rydgren was not involved in any classification determinations related to Plaintiff.

Defendants further argue that by allowing Plaintiff and other prisoners additional time in which to process grievances, and by processing Plaintiff's grievance (M62-113-08), Defendant Rydgren did not act in retaliation to Plaintiff's First Amendment rights, but

---

[3] The Parties do not address the nature of the "informal resolution."

rather she processed his paperwork in accordance with policy.

### 1. Facts

At the time of the incident alleged in Plaintiff's Complaint, Defendant Rydgren was employed at GEO Group, Inc. (Geo) at Kingman Prison, a private prison contracted with the State of Arizona. (Doc. 108 ¶ 3.) Rydgren was a Programs Manager and part of her duties involved administrative processing of inmate grievances. (*Id.*) Plaintiff, who was incarcerated beginning in 2008, was transferred from Arizona State Prison Complex-Florence to the Kingman Prison from April 25, 2018 until July 5, 2018 (approximately 2.5 months). (*Id.* ¶ 5.)

Throughout his time at Kingman Prison, Plaintiff was classified as medium/high custody. (*Id.* ¶ 6.)

On June 14, 2018, Defendant Rydgren issued a disciplinary report regarding Plaintiff with a charge of 17 A "Filing of Vexatious Grievances" stating that

> On 6/14/18 at approximately 1700 hours I, CPS Rydgren, completed a review of all twenty-six processed and unprocessed grievances submitted by inmate Jones, Edward #190298 since his arrival at ASP-Kingman on 4/24/18. During this review, I found that at least one grievance submitted by inmate Jones . . . met the criteria of vexatious grievance by being groundless, not made in good faith and/or being submitted with the intent to harass staff. Inmate Jones . . . was verbally placed on report by Officer Hernandez. . . .

(Doc. 127-5 at 2.) After a disciplinary hearing on June 21, 2018, the Disciplinary Hearing Officer found an informal resolution was appropriate. (*Id.* at 3.)

Because of the influx of prisoners while Plaintiff was housed in Kingman Prison, and in accordance with ADC Policy 802.01, Defendant Rydgren permitted additional times to process grievances to many prisoners, including Plaintiff. (Doc. 108 ¶ 8.) The additional time was not determinative of any basis for the grievance. (*Id.*) Rather, the additional time frame provided was allowed to provide an extension not to exceed 15 workdays, as permitted by ADC Policy 802.01. (*Id.*)

Defendant Rydgren processed Plaintiff's grievance (dated June 6, 2018 and

assigned Case No. M63-113-018), which alleges he had issues with Officer Tyler and Defendant Davis, who was at the time a correctional officer, at intake on April 25, 2018. (*Id.* ¶ 9.) Grievance, M63-113-018 was processed and responded to by the Deputy Warden, who determined on July 9, 2018 that there was no support for the Grievance. (*Id.*) When the response was issued, Plaintiff was no longer housed at Kingman Prison. (*Id.*) Plaintiff appealed the Grievance (M62-113-08) to the Director of the ADC, who affirmed the Deputy Warden's Response to the grievance. (*Id.*)

### 2. Legal Standard

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) [a]n assertion that a [government] actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

### 3. Discussion

Defendant does not address Plaintiff's argument that Defendant Rydgren issued a false disciplinary ticket in retaliation for Plaintiff filing a grievance against her subordinate. Defendant argues that because a disciplinary hearing officer was in charge of the hearing on the disciplinary ticket, Defendant Rydgren was not responsible for any punishment suffered by Plaintiff as a result of the issuance of the ticket. Defendant cites to no law supporting this position and the Court is not aware of any law supporting this position.

Rather, Defendant has the burden of coming forward with evidence demonstrating that there are no disputed issues of material fact, but Defendant does not provide any evidence that Defendant Rydgren issued the disciplinary ticket to advance a legitimate correctional goal. Although Defendant Rydgren submitted a declaration with her Motion for Summary Judgment, she does not address Plaintiff's allegations regarding the June 15, 2018 disciplinary ticket. Defendant also argues that because Plaintiff continued to file grievances, his First Amendment rights were not "chilled." However, the Court must not

examine whether Plaintiff was actually chilled; rather, an objective standard governs the chilling inquiry, and the question is whether the adverse action at issue "would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted). Defendant does not explain the possible consequences of a guilty charge on this allegedly false disciplinary ticket from which the Court could conclude that issuing this false disciplinary charge would not have chilled a person of ordinary firmness from filing future grievances.

Accordingly, the Motion for Summary Judgment will be denied as to Plaintiff's claim that Defendant Rydgren retaliated against Plaintiff for filing a grievance against Defendant Rydgren's subordinate by issuing a false disciplinary ticket on June 15, 2018.

The Motion for Summary Judgment will be granted as to Plaintiff's claim that Defendant Rydgren retaliated against him by extending the time frames for prison officials to respond to his grievances. There is no evidence suggesting that allowing an extension of time frames for a response to a grievance would "chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271. Accordingly, to the extent Plaintiff's First Amendment retaliation claim is premised on Defendant Rydgren extending the time frames for prison officials to respond to his grievances, that claims is dismissed.

### 4. Successive Motion for Summary Judgment

In the Court' s discretion, the Court will allow Defendant Rydgren to file an additional motion for summary judgment as to Plaintiff's First Amendment retaliation claim. *See Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010) (district courts have discretion to permit successive motions for summary judgment).[4]

. . . .

. . . .

---

[4] Because there are credibility disputes that cannot be resolved at the summary judgment stage, there is no reason to permit another motion for summary judgment as to the excessive force claim.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 107) and Plaintiff's Objections to the Magistrate Judge's Orders (Docs. 138 and 140).

(2) Plaintiff's Objections (Docs. 138 and 140) are **overruled** and the Magistrate Judge's Orders (Docs. 126 and 135) are **affirmed**.

(3) Defendants' Motion for Summary Judgment (Doc. 107) is **granted in part and denied in part** as follows:

(a) Defendants' Motion is **granted** to the extent Plaintiff's First Amendment retaliation claim is based on Defendant Rydgren extending the time for responses to grievances.

(b) The Motion for Summary Judgment is otherwise **denied**.

(4) Within **20 days** of the date of this Order, Defendant Rydgren may file a second Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claim.

(5) The remaining claims in this action are a First Amendment retaliation against Defendant Rydgren based on Defendant Rydgren allegedly issuing a false disciplinary ticket on June 14, 2018 in retaliation for Plaintiff filing a grievance against her subordinate and an Eighth Amendment excessive force claim against Defendant Davis.

Dated this 19th day of May, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge